PATRICK S. REGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Regan v. Commissioner
Docket No. 41207-84.
United States Tax Court
T.C. Memo 1987-512; 1987 Tax Ct. Memo LEXIS 508; 54 T.C.M. (CCH) 846; T.C.M. (RIA) 87512; September 30, 1987. *508 During the years in issue, petitioner was a full-time gambler who gambled solely for his own account. Held, petitioner's gambling activities constituted a trade or business within the meaning of secs. 62(1) and 162(a), I.R.C. 1954. Commissioner v. Groetzinger,480 U.S.   , 107 S.Ct. 980 (1987), followed. Consequently, petitioner is not subject to the alternative minimum tax under sec. 55, I.R.C. 1954. Held further, petitioner is not entitled to deduct claimed expenses for meals, lodging, and commissions. Held further, petitioner is liable for an addition to tax pursuant to sec. 6651(a)(1), I.R.C. 1954. Martin Fedder, for the petitioner. Paula Hu and Mary Corrigan Gorman, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: By notice of deficiency dated October 19, 1984, respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Addition to tax under
Year
Deficiency
section 6651(a)(1) [1] *509 1979
$ 12,269
--
1980
57,637
$ 11,046
1981
29,454
2,401
After concessions by both parties, the issues for decision are (1) whether petitioner's gambling activities during the years in issue constituted a trade or business within the meaning of sections 62(1) and 162(a); (2) if so, whether petitioner is entitled to deduct claimed expenses for meals, lodging, and commissions; and (3) whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1) for failure to file a timely 1980 Federal income tax return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, Patrick S. Regan, resided in Baltimore, Maryland, at the time he filed his petition in this case. He filed his Federal income tax returns for the years in issue with the Office of the Internal Revenue Service in Atlanta, Georgia. He filed his 1980 Federal income tax return on April 15, 1982, after obtaining an extension to file the return on or before June 15, 1981. Petitioner was a full-time gambler during the years in issue. During those years, other than some *510 interest income and wages in the amount of $ 407, petitioner's only source of income as his winnings from wagers he placed on jai alai games. Occasionally during the years in issue, petitioner placed wagers on jai alai games for friends as a favor, but he did not act as a bookmaker and did not receive any remuneration for placing these wagers. Instead, petitioner gambled solely for his own account. During 1979, petitioner attended and wagered on jai alai games in Orlando, Florida. During 1980 and 1981, petitioner attended and wagered on jai alai games in Tampa, Florida, during the 6-month season that ran from January through June, and he attended and wagered on Jai alai games in Ocala, Florida, during the 6-month season that ran from July through December. [2] *511 During their respective seasons, jai alai games were played 5 days a week in Tampa and 4 days a week in Ocala in 1980 and 1981, and during those years, petitioner attended and wagered on jai alai games in Tampa and Ocala every day games were played. In 1980 and 1981, petitioner lived in a rental apartment in Tampa during the Tampa jai alai season, and he lived in a rental apartment in Gainesville, Florida, during the Ocala jai alai season. While living in Gainesville during the Ocala jai alai season, petitioner continued to rent the apartment in Tampa. Petitioner placed wagers on jai alai games totaling $ 266,540, $ 743,642, and $ 442,450 in 1979, 1980, and 1981, respectively. His total winnings were $ 286,339, $ 777,773, and $ 468,213 in 1979, 1980, and 1981, respectively. In determining his adjusted gross income for 1979, petitioner deducted his total wagers for 1979, $ 266,540, from his total reported winnings for that year $ 285,601, [3] to arrive at net winnings of $ 19,061. He then deducted from his net winnings $ 1,289, which he purportedly expended for meals and lodging, and he reported the net amount, $ 17,772, as adjusted gross income on his 1979 Federal income tax return. In determining his adjusted gross income for 1980, petitioner deducted his total wagers for 1980, $ 743,642, from his total *512 winnings for that year, $ 777,773, to arrive at net winnings of $ 34,131. He then deducted "rentals," "utilities," and "commissions" in the amounts of $ 1,512.40, $ 206.27, and $ 5,385, respectively, from his net winnings of $ 34,131, and he reported the net amount, $ 27,027.33, as adjusted gross income on his 1980 Federal income tax return. [4] In determining his adjusted gross income for 1981, petitioner deducted his total wagers for 1981, $ 442,450, from his total winnings for that year, $ 468,213, to arrive at net winnings of $ 25,763. He then deducted from his net winnings $ 856.83, which he purportedly expended for meals and lodging, and $ 3,972, which he purportedly expended for commissions, and he reported the net amount, $ 20,934.17, as adjusted gross income on his 1981 Federal income tax *513 return. In his notice of deficiency, respondent determined that petitioner was not engaged in the trade or business of gambling during the years in issue. As a result of this determination, respondent further determined that petitioner's total gambling winnings for the years in issue constituted additional income, and that petitioner's total wagers for those years, while deductible, constituted itemized deductions, that is, deductions from adjusted gross income. The effect of this determination was to subject petitioner to the alternative minimum tax under section 55. Respondent also disallowed the deductions claimed by petitioner for amounts he purportedly paid for meals, lodging, and commissions, asserting, inter alia, that "it has not been established that any amount was for ordinary and necessary business expenses, or was expended for the purpose designated." OPINION The first issue we must decide is whether petitioner's gambling activities during the years in issue constituted a trade or business within the meaning of sections 62(1) and 162(a). If so, petitioner's gambling wager are trade or business expenses, which are deductible from gross income in arriving at adjusted gross *514 income, [5] and, as a result, do not constitute "adjusted itemized deductions" for purposes of the alternative minimum tax imposed by section 55. [6] *515 Respondent argues that petitioner was not engaged in the trade or business of gambling during the years in issue because he "bet solely for his own account and did not act as a bookmaker or hold himself out as offering goods and services." Petitioner contends, however, that "[t]here is nothing in the Internal Revenue code or Regulations to justify restricting a trade or business to only those which meet the * * * requirements of holding oneself out to others," and further contends that an activity constitutes a trade or business if it is sufficiently regular, frequent, active, and substantial, and the taxpayer's primary purpose for engaging in the activity is for income or profit. We agree with petitioner. In Commissioner v. Groetzinger,480 U.S.   , 107 S.Ct. 980 (1987), the Supreme Court held that a full-time gambler who gambled solely for his own account was engaged in a trade or business within the meaning of sections 62(1) and 162(a). *516 In doing so, the Court expressly rejected the Commissioner's contention that carrying on a trade or business necessarily involves the offering of goods and services to others. 107 S. Ct. at 987. Respondent does not argue that the facts of this case are distinguishable from the facts of Groetzinger. To the contrary, respondent asserts that "the issue in the instant case is identical to the issue now before the Supreme Court in Groetzinger." [7] Consequently, Groetzinger is controlling in this case, and we therefore hold that petitioner's gambling activities during the years in issue constituted a trade or business within the meaning of sections 62(1) and 162(a). It follows that petitioner's gambling wagers are not "adjusted itemized deductions" within the meaning of section 57(a)(1), and therefore that petitioner is not subject to the alternative minimum tax under section 55. [8]
The next issue we must decide is whether respondent properly disallowed the deductions petitioner claimed on his 1980 and 1981 Federal income tax returns for meals and lodging *517 expenses. [9]
Section 162(a)(2) permits a deduction for ordinary and necessary "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." Expenses are deductible under this section only if they are (1) reasonable and necessary traveling expenses, that is, travel fares or food and lodging expenses incurred while traveling; (2) incurred while "away from home"; and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers,326 U.S. 465, 470 (1946). Petitioner asserts that his home was in Tampa during all of 1980 and 1981. He further asserts that the meals and lodging expenses he deducted on his 1980 and 1981 Federal income tax returns, $ 1,719 and $ 857, respectively, were incurred in and around Gainesville, in connection with his gambling activities in Ocala, when he lived in Gainesville during the 1980 and 1981 Ocala jai alai seasons. Respondent contends, on the other hand, that petitioner's home for tax *518 purposes was in Gainesville and not Tampa when petitioner purportedly incurred the meals and lodging expenses in question. He therefore asserts that, because petitioner was not "away from home" when these expenses were purportedly incurred, the expenses are not deductible under section 162(a)(2). We agree with respondent on this issue. A taxpayer's home for purposes of section 162(a)(2) is the vicinity of his principal place of business or employment. Daly v. Commissioner,72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). "But if a taxpayer has a principal place of employment in one location and accepts temporary work at another location, his presence at the second location is regarded as 'away from home.'" Kroll v. Commissioner, supra at 562. The record establishes that during 1980 and 1981 petitioner spent an equal amount of time in Tampa and the vicinity of Gainesville, that he engaged in an equal amount of business activity in both places, that he apparently derived an equal amount of income from his activities in both places, and that he merely rented an apartment in both places. Moreover, petitioner's gambling *519 activities in Tampa and the vicinity of Gainesville during 1980 and 1981 were not temporary, but were of indefinite or indeterminate duration, because they were seasonal and recurring activities. See Dilley v. Commissioner,58 T.C. 276, 280 (1972). On these facts, we conclude that petitioner's principal place of employment during 19800 and 1981, and therefore his home for tax purposes during those years, was in Tampa from January through June, and in the vicinity of Gainesville from July through December. See Montgomery v. Commissioner,64 T.C. 175, 179 (1975), affd. 532 F.2d 1088 (6th Cir. 1976). [10] It follows that petitioner was not "away from home" when he purportedly incurred the meals and lodging expenses that he deducted on his 1980 and 1981 Federal income tax returns, and therefore that respondent's disallowance of these deductions must be sustained.[11] *520 Respondent also disallowed the deductions petitioner claimed for "commissions" on his 1980 and 1981 Federal income tax returns, $ 5,385 and $ 3,972, respectively. Respondent's determination in the notice of deficiency is presumed to be correct, and petitioner bears the burden of proving it in error. Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933). Petitioner claims that the "commissions" in question represent $ 10 a day for tips, $ 2 a day for a program and admission to the jai alai gaimes, and $ 2 a day for parking. Petitioner also claims that he maintained a daily record of these expenditures. Petitioner introduced into evidence only one page from what he claims was his daily record. This page provides information for only 4 days in 1981, and shows that petitioner purportedly paid a total of $ 109 in "tips" on those days. Other than petitioner's testimony, there is no other evidence in the record that substantiates that petitioner actually paid the commission expenses in question. On this record, we are unable to conclude that *521 petitioner actually paid the commission expenses he deducted on his 1980 and 1981 Federal income tax returns. It follows that respondent's disallowance of these deductions must be sustained. We must finally decide whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1) for failure to file a timely 1980 Federal income tax return. Petitioner bears the burden of proof with respect to this issue. Rule 142(a); Welch v. Helvering, supra at 115. Petitioner filed his 1980 Federal income tax return on April 15, 1982, after obtaining an extension to file the return on or before June 15, 1981. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless it is shown that such failure was due to reasonable cause and not willful neglect. [12] Petitioner proffered only his unsupported testimony that he was unable to file a timely 1980 return because friends had either misplaced or withheld records that he needed to prepare the return. Unavailability of records, without more, is not reasonable cause for failing to file a timely return. [13] Accordingly, we sustain respondent's determination that petitioner is liable for an addition to tax pursuant *522 to section 6651(a)(1) for failure to file a timely 1980 Federal income tax return. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all sections referred to are sections of the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all rules referred to are rules of the Tax Courts Rules of Practice and Procedure.
2. During 1980 and 1981, jai alai games were not actually played in Ocala, but were played at the Ocala Jai-Alai, which was located approximately 20 miles north of Ocala and 20 miles south of Gainesville, Florida. 3. The parties have stipulated that petitioner's actual total winnings for 1980 were $ 286,339. ↩
4. The parties have stipulated that petitioner claimed deductions for meals and lodging in 1980 in the amount of $ 1,719, and that he claimed deductions for commissions in 1980 in the amount of $ 5,385, apparently agreeing that the deductions for "rentals" and "utilities" appearing on petitioner's 1980 Federal income tax return should be recharacterized as deductions for meals and lodging. ↩
5. Sec. 62 defines "adjusted gross income" as gross income minus certain deductions specified therein, including trade and business deductions. Sec. 62(1) describes trade and business deductions as "deductions allowed by this chapter * * * which are attributable to a trade or business carried on by the taxpayer." ↩
6. Sec. 55 imposes an alternative minimum tax on "alternative minimum taxable income." Sec. 55(a), (b). The term "alternative minimum taxable income" includes "adjusted itemized deductions" within the meaning of sec. 57(a)(1). Sec. 55(b)(1)(C). However, the term "adjusted itemized deductions" does not include deductions allowable in arriving at adjusted gross income. See secs. 57(b)(1), 63(f)(1). As already noted, trade and business expenses are allowable in arriving at adjusted gross income under sec. 62(1). See note 5, supra. Consequently, trade and business expenses are not "adjusted itemized deductions," are therefore not included in "alternative minimum taxable income," and are therefore not subject to the alternative minimum tax imposed by sec. 55. For tax years after 1982, deduction for gambling losses are excluded from the sec. 55 tax base. See sec. 55↩, as amended by sec. 201(a), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 411. 7. This case was tried before the Supreme Court decided Commissioner v. Groetzinger,480 U.S.   , 107↩ S.Ct. 980 (1987). 8. See note 6, supra.↩
9. Petitioner deducted meals and lodging expenses on his 1979 Federal income tax return in the amount of $ 1,289. On brief, petitioner concedes that he is not entitled to this deduction. ↩
10. See also Blue v. Commissioner,T.C. Memo. 1982-486↩. 11. At trial, we ruled that respondent bore the burden of proving that petitioner's claimed expenses for meals and lodging were not incurred "while away from home." On brief, respondent argues that this ruling was in error. Having decided that the record establishes that petitioner was not away from home when he purportedly incurred the meals and lodging expenses in question, we need not address this issue. 12. Sec. 6651(a)(1) provides, in pertinent part, as follows: (a) Addition to the Tax. -- In case of failure -- (1) to file any return * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *.↩
13. Hines v. Commissioner,T.C. Memo. 1982-589; see Swafford v. Commissioner,T.C. Memo. 1973-122; Hackett v. Commissioner,T.C. Memo. 1970-17↩.